# NO. 12-24-00018-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *PAMELA MOORE HAWKINS, APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Pamela Moore Hawkins appeals her conviction for theft. In her sole issue, she contends that her sentence for fourteen months' confinement in a state jail facility is cruel and unusual. We affirm.

## BACKGROUND

Appellant was indicted for theft of property in an amount of less than $2,500, namely retail merchandise, clothing, and food from a Walmart in Smith County, Texas.[1]  The indictment also alleged that she had two prior theft convictions, enhancing the punishment level to that of a state jail felony.[2]

Appellant rejected the State's offer of eighteen months of confinement, as well as its subsequent offer of twelve months of confinement.  Appellant thereafter made an open plea of "guilty" and elected that the trial court assess her punishment.  The trial court accepted her plea,

---

[1] *See* TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2023).

[2] *See id.* § 31.03(e)(4)(D).

ordered the preparation of a presentence investigation report, and set the matter for a punishment hearing.

At the punishment hearing, Appellant called Dr. Margarita De La Garza-Graham, who is a medical physician and surgeon. Appellant is her patient. Dr. De La Garza-Graham surgically treated Appellant's acute appendicitis by performing an appendectomy. She testified that Appellant's appendectomy took an unusually long time of three hours to perform due to various complications—namely Appellant is "a very large woman," and her previous surgeries created extensive scar tissue making the surgery more difficult. She also testified that one of the operating instruments nicked Appellant's intestines. As a result, she later learned that Appellant developed an enterocutaneous fistula, which causes contents of the stomach and intestines to leak in her abdomen. This resulted in several subsequent surgeries to properly heal. The doctor testified after months of treatments, she finally decided on a more complex surgery, which involved open abdomen implantation of surgical mesh material. Dr. De La Garza-Graham testified that this surgery was successful.

After that surgery, Dr. De La Garza-Graham stated that Appellant had a large surgical wound that had difficulty healing, but she admitted, "I think it's pretty healed now." She did testify that the insertion of the mesh could lead to future complications, including infections. She also stated that there was a fifty percent chance that another surgery would be required to prevent future complications. She testified further that Appellant suffered from "poor protoplasm," which means that she had many comorbidities due to her age, size, diabetes, and several COVID infections during this time. She also noted that Appellant lost "quite a bit of weight" since the surgery. At the time of the punishment hearing, Dr. De La Garza-Graham continued Appellant's treatment for other problems related to her comorbidities.

Dr. De La Garza-Graham opined that confinement could potentially result in other medical issues due to Appellant's comorbidities, and the inherent nature of the care available in the state jail facility would be less desirable and could be delayed due to staff and budgetary shortages.[3] She also stated that Appellant requires a CPAP machine at night to assist in breathing. She

---

[3] Dr. De La Garza-Graham also testified that she served for six years on the Texas Department of Criminal Justice Correctional Managed Health Care Committee. She stated that the committee is a group of physicians and surgeons who assist and provide policy and guidance towards TDCJ for their medical treatment programs.

acknowledged that CPAP units are available while in confinement but are more difficult to obtain than in the normal clinical setting.

On cross-examination, Dr. De La Garza-Graham admitted that the physicians providing medical care to inmates are charged with the same duties as any other physician regarding their patients. She ultimately conceded that Appellant "looks well," and "seems to be doing okay . . . as long as you don't lift her blouse up and look at her abdomen." She further admitted that Appellant would receive ongoing treatment during her confinement, even for significant complications, albeit more slowly, and that any potential complications might not occur for several years.

Appellant argued that, in light of her medical condition, she should be placed on community supervision for a five-year period, or alternatively, sentenced to the minimum statutory confinement of 180 days in a state jail facility. The State argued for a sentence of confinement for fifteen months. The trial court ultimately sentenced her to fourteen months of confinement in a state jail facility. This appeal followed.

## CRUEL AND UNUSUAL PUNISHMENT

In her sole issue, Appellant contends that the trial court abused its discretion when it sentenced her to fourteen months' confinement in a state jail facility because, according to her, "medical testimony established that, due to her medical history and current treatments, she will be unable to receive the proper medical care while in custody and could die while serving this sentence." In essence, she argues that the sentence results in cruel and unusual punishment.

However, Appellant did not raise a timely objection in the trial court regarding the issue of cruel and unusual punishment, and she therefore failed to preserve any such error. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (waiver of rights under Texas Constitution); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (waiver of rights under United States Constitution); *see also* TEX. R. APP. P. 33.1(a); *see also Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) ("Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion[;] . . . it [is] incumbent upon the Court itself to take up error preservation as a threshold issue.").

These same preservation rules apply in cases where a defendant claims that a sentence results in cruel and unusual punishment due to her medical condition. *See, e.g., Olsen v. State*,

No. 06-14-00193-CR, 2015 WL 2437561, at *1 (Tex. App.—Texarkana May 22, 2015, no pet.) (mem. op., not designated for publication) (holding allegation that five-year term of confinement was cruel and unusual due to recent surgery and daily throat cancer treatment not properly preserved due to failure to object); *Spencer v. State*, No. 02-13-00211-CR, 2014 WL 491775, at *1 (Tex. App.—Fort Worth Feb. 6, 2014, no pet.) (mem. op., not designated for publication) (holding complaint that five-year term of confinement was cruel and unusual due to "brain tumor requiring continual radiation treatment" not properly preserved by trial objection or subsequent motion for new trial). For the reasons explained herein, despite Appellant's failure to preserve error, we conclude that her sentence does not constitute cruel and unusual punishment.

The United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. This provision was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Meadoux v. State*, 325 S.W.3d 189, 193 (Tex. Crim. App. 2010). Similarly, the Texas Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." TEX. CONST. art. 1, § 13. The difference between the Eighth Amendment's "cruel and unusual" phrasing and the Texas Constitution's "cruel or unusual" phrasing is insignificant. *Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997).

The legislature is vested with the power to define crimes and prescribe penalties. *See Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd); *see also Simmons v. State*, 944 S.W.2d 11, 15 (Tex. App.—Tyler 1996, pet. ref'd). Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statute is not excessive, cruel, or unusual. *See Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Davis*, 905 S.W.2d at 664. In this case, Appellant was convicted of theft in an amount of less than $2,500 with two prior theft convictions, a state jail felony as alleged. *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(D). (West Supp. 2023). Such an offense carries a sentencing range of not more than two years or less than 180 days. *Id.* § 12.35(a) (West Supp. 2023). Thus, the trial court's assessment of a fourteen-month term of confinement falls within the range set forth by the legislature. Therefore, the punishment is not prohibited as cruel, unusual, or excessive per se. *See Harris*, 656 S.W.2d at 486; *Jordan*, 495 S.W.2d at 952; *Davis*, 905 S.W.2d at 664.

It has been long decided that deliberate indifference to medical needs of prisoners violates the Eighth Amendment. *See* **Estelle v. Gamble**, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). Here, however, the trial court made it clear before imposing the sentence that it considered Dr. De La Garza-Graham's medical testimony: "Certainly, when people have medical conditions, that's an issue for the Court to be aware of. It doesn't become outcome determinative. And they do provide medical care in the penitentiary for people. I do know that." Because that testimony never left the realm of mere speculation, it cannot be said that the trial court exhibited deliberate indifference in imposing a fourteen-month term of confinement, particularly where Appellant ultimately asked for either a five-year period of community supervision, *or alternatively* a six-month term of confinement.

Furthermore, Appellant has not shown a constitutional violation because the harm she seeks to remedy is purely speculative. *See* **State v. Mungia**, 119 S.W.3d 814, 817 (Tex. Crim. App. 2003) (finding no constitutional violation had occurred where there was only the possibility that appellee may be killed if sent to prison). Appellant has serious health issues and no doubt had several complications due to her appendectomy surgery. However, Dr. De La Garza-Graham testified that the surgeries to remove Appellant's appendix, and subsequent surgeries to mitigate the complications therefrom, were successful. She admitted that "I think it's pretty healed now." She further testified that future complications such as infections *could* occur at some point in the future but did not conclude that it was inevitable. Rather, she opined that fifty percent of the time, a subsequent surgery could be required. Although she stated that death is generally possible from Appellant's condition, she admitted that these hypothetical complications are treatable. Finally, Dr. De La Garza-Graham conceded that the health care providers in the state jail facility are required to treat their inmate-patients the same as in a normal clinical setting, and likewise conceded that Appellant would receive medical treatment while incarcerated, even surgery if necessary.

We hold that even if Appellant preserved this issue, she has not shown any constitutional violation under the United States Constitution or Texas Constitution. *See, e.g.*, **Buenano v. State**, No. 13-03-349-CR, 2004 WL 2335127, at *1 (Tex. App.—Corpus Christi–Edinburg May 6, 2004, no pet.) (mem. op., not designated for publication) ("Appellant anticipates not receiving proper medical attention or treatment for his heart condition while in prison, which will result in his death. However, there is no evidence, other than [his] testimony, that this will occur. Therefore, appellant

has failed to demonstrate any constitutional violation."); ***Jackson v. State***, No. 13-01-497-CR, 2002 WL 366523, at \*2 (Tex. App.—Corpus Christi–Edinburg Mar. 7, 2002, no pet.) (op., not designated for publication) (rejecting argument that prison sentence violated Eighth Amendment despite his testimony that tumor in his hip "could possibly be cancerous"); ***Turk v. State***, No. 01-94-01190-CR, 1995 WL 694735, at \*2 (Tex. App.—Houston [1st Dist.] Nov. 22, 1995, pet. ref'd) (op., not designated for publication) (noting "[a] sentence will generally not be held to violate the eighth amendment because of the defendant's age or infirmity", rejecting defendant's argument that his cancer diagnosis results in constitutional violation).

Accordingly, Appellant's sole issue is overruled.

## DISPOSITION

Having ***overruled*** Appellant's sole issue, the trial court's judgment is ***affirmed***.

JAMES T. WORTHEN
Chief Justice

Opinion delivered July 24, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

**JULY 24, 2024**

**NO. 12-24-00018-CR**

**PAMELA MOORE HAWKINS,**
Appellant

V.

**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-0805-22)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*